UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

AWIL MOHAMED,   CIVIL NO. 17-5055 (DWF/DTS)

    Petitioner,

v.   REPORT AND RECOMMENDATION

SECRETARY,
*Department of Homeland Security;*
JEFFERSON SESSIONS,
*Attorney General;*
KURT FREITAG,
*Freeborn County Sheriff,* and
PETER BERG,
*U.S. Immigration Customs Enforcement Acting Field Office Director for Bloomington, Minnesota*

    Respondents.

---

Awil Mohamed, A079-822-319, Freeborn County Adult Detention Center, PO Drawer 170, Albert Lea, Minnesota, 56007, *Pro Se* Petitioner;

Ana H. Voss, Esq. and Ann M. Bildtsen, Esq., Assistant U.S. Attorneys, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota, 55415, for Respondents

---

### INTRODUCTION[1]

Petitioner Awil Mohamed ("Mohamed") has been detained by United States Immigration and Customs Enforcement ("ICE") for over 15 months pending removal from the United States. Mohamed asserts that his continued detention is unreasonable and violates his due process rights. He therefore seeks a Writ of Habeas Corpus

---

[1] This matter was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

1

securing his immediate release. This Court recommends the Petition be granted as outlined below.

## FINDINGS OF FACT

### 1. Mohamed's Criminal Convictions

Mohamed is a native and citizen of Somalia who entered the United States on July 5, 2001 as a refugee. Notice to Appear 4, Docket No. 5 Ex. 5. Mohamed has multiple criminal convictions in the United States, including providing a peace officer a false name/birthdate/ID in 2006, fifth degree assault in 2008, and third degree sale of cocaine in 2013 and 2014. Ligon Decl. ¶¶ 4-9, Docket No. 5 Ex. 1. Following the 2014 conviction, Mohamed was sentenced to two concurrent sentences of 52 months in prison. Ligon Decl. Ex. 1-D, Docket No. 5 Ex. 4; Ligon Decl. ¶¶ 8-9, Docket No. 5.[2]

### 2. Mohamed's Removal Proceedings

While imprisoned in April 2015, Mohamed received a Notice to Appear alerting him that the Government had begun the process to deport him. Ligon Decl. ¶ 10, Docket No. 5 Ex. 1. In order to effectuate his removal, Immigration and Customs Enforcement ("ICE") arrested Mohamed on December 5, 2016. *Id.* ¶ 11. The immigration judge ("IJ") who heard the matter determined that repatriating Mohamed to Somalia would violate Article III of the Convention Against Torture because, as a Somali tribal minority, he was likely to be tortured upon his return to Somalia. IJ Ord., Docket No. 5. Ex.6. Therefore, on January 30, 2017, the IJ deferred Mohamed's removal to

---

[2] The Ligon Declaration and exhibits make clear that Mohamed was convicted on both the 2013 and 2014 charges and sentenced to 52 months on each conviction, the sentences to run concurrently. Ligon Decl. ¶¶ 8-9, Docket No. 5.

2

Somalia but ordered him removed to any other country that would accept him. *Id.* at 4-5.

On February 17, 2017, The Government appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). Ligon Decl. ¶ 13, Docket No. 5. On June 22, 2017, the BIA remanded the case, holding that the IJ's factual findings were "too incomplete to provide [it] with a meaningful basis for review." BIA Decision 2-3, Docket No. 5 Ex. 5. On August 21, 2017, the IJ reconsidered Mohamed's removability and again concluded repatriation to Somalia would violate the Convention Against Torture, but that Mohamed could otherwise be removed elsewhere. Ligon Decl. ¶ 15, Docket No. 5 Ex. 6. On September 6, 2017, the Government again appealed to the BIA. *Id.* ¶ 16. On January 26, 2018, the BIA vacated the IJ's decision because Mohamed had not borne his burden to show that he would likely be tortured upon his return to Somalia because of his minority tribal status. BIA Ord. 5, Docket No. 9-1. However, the BIA again remanded the case to the IJ in order to address whether Mohamed's drug and alcohol addictions would likely lead to his torture in Somalia by the Islamist militia group al-Shabaab. *Id.*

### 3. **The Habeas Proceeding**

Mohamed filed this Petition for a Writ of Habeas Corpus on November 8, 2017, arguing he should be released pending removal because ICE is forbidden from holding him indefinitely, and that his deportation is not reasonably foreseeable. Pet'r. Mem., Docket No. 1. The Government filed their response on January 4, 2018 (Gov't. Resp., Docket No. 4), to which Mohamed replied on January 16, 2018. Pet'r. Reply, Docket No. 7. The Government filed a supplemental response on March 20, 2018 to inform

the Court of the BIA's January 26, 2018 remand to the IJ and to reiterate its opposition to Mohamed's release. Gov't. Supp. Resp., Docket No. 9.

## CONCLUSIONS OF LAW

### 1. Scope of Review

8 U.S.C. § 1226(c) mandates detention during removal proceedings for certain aliens who have committed specified crimes. 8 U.S.C. § 1226(c). Unlike non-criminal aliens, individuals detained pursuant to § 1226(c) may not be released, except in narrow circumstances that are inapplicable here. *See* 8 U.S.C. § 1226(c)(2).

An Immigration Judge's decision to remove an alien may be appealed to the Board of Immigration Appeals, and from there directly to the appropriate circuit court of appeals. 8 C.F.R. § 1003.38(a); 8 USC § 1252(b)(1). Thus, this Court does not have jurisdiction to decide whether Mohamed is removable under 8 U.S.C. § 1227(a)(2); nor does it have jurisdiction to review the Attorney General's decision to detain him during his removal proceedings. *See*, 8 U.S.C. § 1226(e). On habeas review, however, this Court may decide whether Mohamed's continued detention violates his constitutional due process rights. *Davies v. Tritten*, 2017 WL 4277145, at *2 (D. Minn. Sept. 25, 2017).

### 2. Pre-Removal Detention pursuant 8 U.S.C. § 1226(c)

Mohamed has been in pre-removal detention for over 15 months and is not currently subject to an actionable final removal order. Therefore, his detention is governed by § 1226(c).[3] During the period before a final order of removal is issued, "the

---

[3] Once a final removal order for is issued, ICE has separate statutory authority to detain individuals to ensure they are removed. Under 8 U.S.C. § 1231(a)(2), the Attorney General *shall* detain an alien during the 90-day removal period following a final

4

Government may constitutionally detain deportable aliens during the limited [time] necessary for their removal proceedings." *Demore v. Kim*, 538 U.S. 510, 527-28, 558–59 (2003).

All circuit courts that have addressed the issue of pre-removal detention under §1226(c) have construed that statute to contain an implicit time limit on the length of permissible detention. *See Davies v. Tritten*, 2017 WL 4277145, at *3 (D. Minn. Sept. 25, 2017)*.* The majority of those circuits have adopted a fact-dependent reasonableness standard for judging whether the period of detention has exceeded this permissible duration. *See Reid v. Donelan*, 819 F.3d 486, 500 (1st Cir. 2016); *Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199, 1215 (11th Cir. 2016); *Leslie v. Attorney Gen. of U.S.*, 678 F.3d 265, 269 (3d Cir. 2012); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 234 (3d Cir. 2011); *Ly v. Hansen*, 351 F.3d 263, 271 (6th Cir. 2003). The Second and Ninth Circuits, however, have adopted a bright-line rule, requiring a specific finding of flight risk or danger to the community to justify any pre-removal detention exceeding six months. *Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015); *Rodriguez v. Robbins*, 715 F.3d 1127, 1138 (9th Cir. 2013).

Very recently, however, the United States Supreme Court has cast doubt on the continued viability of these decisions. In *Jennings v. Rodriguez,* 138 S.Ct. 830 (2018), the Supreme Court reversed and remanded the Ninth Circuit's decision in *Rodriguez v.*

---

order of removal and *may* thereafter continue to detain an individual removable under § 1227(a)(2) if the Attorney General determines the alien is a risk to the community. 8 U.S.C. § 1231(a)(6). An order for removal becomes final "when the alien's appeal to the Board of Immigration Appeals (Board) is unsuccessful or the alien declines to appeal to the Board." *Nken v. Holder*, 556 U.S. 418, 439 (2009)(Alito, J., dissenting). The constitutionality of this post-removal period of detention is governed by *Zadvydas v. Davis,* 533 U.S. 678 (2001).

*Robins,* 715 F.3d 1127 (9\<sup>th</sup> Cir. 2013), and in the process rejected the statutory construction of §1226(c) underlying all of these decisions applying *Demore.* The Ninth Circuit, relying on the canon of constitutional avoidance, had construed § 1226(c) as imposing an implicit six-month time limit on an alien's pre-removal detention. Absent such construction, the Ninth Circuit reasoned, § 1226(c) would run afoul of the constitutional due process constraints against "indefinite" detention identified in *Zadvydas.* To avoid this due process concern it applied the canon of constitutional avoidance and derived an implicit six-month time limit on detention under § 1226(c).

All six circuit courts that have addressed the issue of pre-removal detention under § 1226(c) applied that same canon of constitutional avoidance (though, as noted, four of those six circuits adopted a fact-based reasonableness standard for determining whether the period of detention was constitutional rather than the six-month bright-line rule adopted by the Ninth Circuit). *See, Sopo*, 825 F.3d at 1202 (we "conclude, as a matter of constitutional avoidance, that § 1226(c) contains an implicit temporal limitation against unnecessarily prolonged detention…".); *Diop,* 656 F.3d at 231 ("Applying this principle [of constitutional avoidance] to  § 1226(c), we conclude that the statue implicitly authorizes detention for a reasonable amount of time…."); *Ly,* 351 F.3d at 267 ("Since permanent detention of Permanent Resident Aliens under [§ 1226(c)] would be unconstitutional, we construe the statute to avoid that result…."): *Lora,* 804 F.3d at 606 ("we hold that, in order to avoid significant constitutional concerns surrounding the application of Section 1226(c), it must be read to contain an implicit temporal limitation").

In *Jennings*, the Supreme Court specifically rejected the reasoning and statutory construction on which this entire body of precedent is based:

> The canon of constitutional avoidance "comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction" …. In the absence of more than one plausible construction, the canon simply "'has no application.'" [citations omitted].
>
> The Court of Appeals misapplied the canon in this case because its interpretation of [§ 1226(c) is] implausible.

138 S.Ct. at 842.

In the context of § 1226(c), the Supreme Court reasoned, there was no basis to apply the canon of constitutional avoidance because that statute simply was not ambiguous.[4] Not only was § 1226(c) unambiguous as to the defined period of allowable detention, this misreading of the statute led to an erroneous conflation of the opinion in *Zadvydas* with the opinion in *Demore.* The due process concern – indefinite detention - that the post-*Demore* decisions identified as the justification for the implicit time limit incorporated into § 1226(c) stemmed from this failure to distinguish the statute at issue in *Zadvydas* from § 1226(c)*:*

> …the Court of Appeals [in *Rodriguez*] … failed to address whether *Zadvydas's* reasoning may fairly be applied in this case despite the many ways in which the provision in question in *Zadvydas*, § 1231(a)(6), differs materially from [§ 1226(c)]….In *Demore v. Kim,* 538 U.S. at 529, we distinguished § 1226(c) from the statutory provision in *Zadvydas* by pointing out that detention under § 1226(c) has "a definite termination point" – and not some arbitrary time

---

[4]   The Supreme Court also voiced skepticism regarding the application of the canon of constitutional avoidance in *Zadvydas*: "*Zadvydas* represents a notably generous application of the constitutional-avoidance canon." 138 S.Ct. at 843.

7

>limit devised by courts – that marks the end of the Government's detention under § 1226(c).

Because the statutory construction of § 1226(c) that underlies the post-*Demore* cases is no longer good law, the decisions applying that construction are themselves no longer binding precedent.[5] The import of *Jennings*, then, is that this Court may no longer simply rely on those cases purporting to apply *Demore*, but most look to *Demore* itself and must attempt to address the constitutional issue directly. Thus, Mohamed's petition must rise or fall based on what this court can glean from *Demore,* and on its best judgment of the constitutional issue raised by Mohamed.

In *Demore,* the Court held that the mandatory detention provision of § 1226(c) was not on its face unconstitutional because the period of detention was (1) not "indefinite" (it terminated upon conclusion of the removal proceedings); (2) was relatively brief (it could be expected to last no more than five months, typically); and (3) served the government's legitimate purposes of securing the alien's presence during the removal process and preventing the alien form committing further crime. Thus, in *Demore*, the Supreme Court distinguished *Zadvydas* because the statutory provision at issue in that case involved an indefinite period of detention that was potentially permanent. The cases applying *Demore* have focused on the critical assumption that detention under § 1226(c) would typically be brief to find that prolonged detention – whether or not indefinite – was unconstitutional. In this case, it is undisputed

---

[5] Decisions of this Court applying this precedent have suggested that the time limit adopted in the post-*Demore* cases was constitutionally required. But that is a subtle mis-reading of those prior cases, which all applied the canon of constitutional avoidance. Since that statutory construction is no longer valid, it requires this court to look at the constitutional issue directly.

8

Mohamed's detention is now over 15 months – far longer than the presumed "limited period necessary for his removal proceedings."

Because the majority opinion in *Demore* does not directly consider whether due process prohibits such lengthy detention under § 1226(c), and because the post-*Demore* decisions have also avoided directly addressing this Constitutional question, this Court begins its analysis with Justice Kennedy's concurring opinion in *Demore*. In his concurrence Justice Kennedy noted:

> …the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified….Were there to be an unreasonable delay by the INS in pursuing and completing the deportation proceedings, it could become necessary to inquire whether the detention is not to facilitate deportation, or to protect against the risk of flight or dangerousness, but to incarcerate for other reasons.  This is not a proper inference, however, either from the statutory scheme itself or from the circumstances of this case.

*Demore,* 538 U.S. at 532-33.

Thus, under Justice Kennedy's analysis, an unreasonable delay in completing the removal process may, in individual § 1226(c) cases, trigger the right to an individualized determination of the detainee's risk of flight and/or dangerousness (*i.e.*, a bond hearing).  Though the statute serves a valid Constitutional purpose, its facial validity stems not only from the purpose it serves, but from the assumption that it will typically serve that purpose expeditiously.  If the process is unreasonably delayed, it could be necessary to inquire whether continued detention is in fact serving the valid purpose of protecting against the risk of flight or dangerousness.

This Court is aware that Justice Kennedy's opinion did not command a majority of the Supreme Court. Though merely a concurrence, however, Justice Kennedy's opinion is consonant with the majority opinion (which found the statute constitutional, in part, because detention would be brief). So, too, though the post-*Demore* cases were based upon an improper application of the canon of constitutional avoidance, they nonetheless identified that unreasonably prolonged detention under § 1226(c) could violate the detainee's due process rights. Finally, though *Zadvydas* concerned a different detention provision that raised concerns unique to that statute, that decision also recognized that an unreasonably prolonged period of detention can violate due process. Aware there is no controlling precedent on the issues presented here, this Court proceeds with caution. In light of the above, this Court concludes that unreasonably prolonged detention under § 1226(c) without an individualized determination of flight risk or danger to the community potentially violates a detainee's right to due process.

The question thus becomes whether Mohamed's detention has become unreasonable so as to require a bond hearing. This Court recently applied a fact-based individualized standard to determine the constitutionality of an alien's continued pre-removal detention. *Wilson Nduri Tindi, Petitioner, v. Sec'y, Dep't of Homeland Security; Jefferson Sessions, Attorney General; Scott Baniecke, ICE Field Office Director; & Kurt Freitag, Freeborn Cty. Sheriff, Respondents.*, No. CV 17-3663(DSD/DTS), 2018 WL 704314, at *3 (D. Minn. Feb. 5, 2018). Adopting this approach here leads the Court to conclude that Mohamed's continued detention has been so prolonged as to require a bond hearing to determine whether his release would pose a risk of flight or danger to

10

the community. Courts have been clear that as the period of detention grows longer, the heavier is the government burden to justify continued detention. *Davies*, 2017 WL at *4; *see also Reid v. Donelan*, 991 F. Supp. 2d 275, 281 (D. Mass. 2014), *aff'd*, 819 F.3d 486 (1st Cir. 2016) (A 14-month detention is "well beyond the brief detainment contemplated in *Demore*."); *Ly*, 351 F.3d at 270 ("[W]e affirm … that incarceration for 18 months pending removal proceedings is unreasonable."). Relevant factors in determining reasonableness include "the total length of detention; the foreseeability of proceedings concluding in the near future (or the likely duration of future detention); the period of the detention compared to the criminal sentence; the promptness (or delay) of the immigration authorities or the detainee; and the likelihood that the proceedings will culminate in a final removal order." *Reid*, 819 F.3d at 500.

Mohamed has been in ICE custody for over 15 months, with an undefined period yet to remain. Even if the Government wins before the IJ, removal may be delayed by appeals to the BIA and beyond to the Eighth Circuit, as well as the logistical challenges of deportations to Somalia. *See Dhuuh v. Sessions*, 2017 WL 6888818, at *1 (D. Minn. Dec. 20, 2017), report and recommendation adopted, No. 017CV05486MJDKMM, 2018 WL 385472 (D. Minn. Jan. 11, 2018)(detailing the Government's unsuccessful Somali repatriation attempts). Should the appeal process conclude that Mohamed cannot be deported to Somalia, the Government has identified no country willing to receive Mohamed nor articulated a plan to deport to that unidentified land. Indeed, the vigor with which the Government has contested the IJ's previous rulings suggests that securing an alternate destination for Mohamed may be problematic. And while the IJ's forthcoming decision may lead Mohamed closer to final removal status, that in and of

11

itself does not justify continued unconstitutional detention. *See Moallin v. Cangemi*, 427 F. Supp. 2d 908, 926 (D. Minn. 2006)(holding that a petitioner's potential shift from pre to final order of removal status does not excuse violating *Demore* when the petitioner has been held for 13 months and there is an "absence of any plan or timetable for removal"). At this point, there has been no individualized determination that Mohamed is a flight risk or that his release would endanger the community.

The Court recognizes that Mohamed's continued detention would not result in the threat of indefinite detention that concerned the Supreme Court in *Zadvydas*; it is certain that, at some point, the IJ, the BIA and, if appealed, the Eighth Circuit, will render decisions on Mohamed's removal. But the probability that those decisions will "culminate in a final removal order" that could be enforced would require this Court to presume too much. *See Reid,* 819 F.3d at 500 ("[t]here is a difference between the 'foreseeability' of proceedings ending and the 'foreseeability' of proceedings ending *adversely.*") (emphasis in original).

The Government objects that there has been no delay on their part in facilitating Mohamed's deportation and the delay has been due to an unusually long and complicated appeals process. Govt. Resp. 16, Docket No. 4. The Court agrees there is no evidence the Government has acted ineffectively in its attempt to remove Mohamed from the United States, but, "appeals and petitions for relief are to be expected as a natural part of the process. An alien who would not normally be subject to an indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him." *Ly*, 351 F.3d at 272.

Finally, had Mohamed not been taken into ICE custody, he would almost certainly have completed serving his concurrent 52-month sentences. For these reasons, the Court believes Mohamed is entitled to a bond hearing. If he is released, it is reasonable to impose conditions on his release to protect the public and to reasonably assure his presence should he be ordered removed. If the IJ determines that Mohamed is not a flight risk or danger, the government may nonetheless impose, through an order of supervision, such release conditions as prescribed by 8 C.F.R. § 241.13(h) as it deems necessary and appropriate. If that bond hearing is not held within 30 days, the Court recommends that Mohamed be released immediately.

## RECOMMENDATION

For the reasons set forth above, IT IS RECOMMENDED THAT Mohamed's Petition for a Writ of Habeas Corpus (Docket No. 1) be GRANTED as follows:

1. That on or before April 20, 2018, ICE shall hold a bond hearing or release Mohamed from custody on such terms and conditions as it deems necessary to protect the community and ensure Mohamed's appearance; and

2. In the event ICE does not conduct a bond hearing on or before April 20, 2018, that a Writ of Habeas Corpus issue immediately compelling Mohamed's unconditional release.

Dated:     March 23, 2017

*s/ David T. Schultz*
DAVID T. SCHULTZ
United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).